UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.T., et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>        Defendants. | Case No. 23-cv-06524-LJC<br><br>**ORDER REGARDING MOTION TO STRIKE CLASS ALLEGATIONS**<br><br>Re: Dkt. Nos. 44 |

## I. INTRODUCTION

This putative class action concerns a mass arrest in the wake of the 2023 "Dolores Hill Bomb," an unsanctioned skateboarding event that has taken place annually in recent years on one of San Francisco's steep city streets. Plaintiffs J.T., L.R., and C.L. are three minors who were among approximately 113 people arrested the night of July 8, 2023, all of whom they seek to represent as a class. Through their parents, who were previously appointed guardians ad litem, Plaintiffs assert claims under 42 U.S.C. § 1983 for violation of their rights under the First, Fourth, and Fourteenth Amendments, as well as related state law claims, against Defendants the City and County of San Francisco (the City) and three of its police officials, Chief William Scott, Captain Thomas Harvey, and Lieutenant Matt Sullivan.

Defendants now move under Rule 12(f) of the Federal Rules of Civil Procedure to strike Plaintiffs' allegations regarding class treatment of their claims. The Court held a hearing on April 30, 2024. For the reasons discussed below, this Motion is DENIED.[1]

---

[1] All parties have consented the jurisdiction of a magistrate judge for all purposes under 28 U.S.C. § 636(c).

## II. ALLEGATIONS OF THE AMENDED COMPLAINT

The Court's separate Order on Defendants' Motion to Dismiss includes a detailed summary of Plaintiffs' allegations. In brief, Plaintiffs are teenage girls who attended or were in the vicinity of the Dolores Hill Bomb, an unsanctioned and loosely organized skateboarding exposition that has occurred every summer in San Francisco for the past several years. Plaintiffs J.T. and C.L. each attended to watch the skateboarding, while Plaintiff L.R. was passing through the area when she stopped to talk to someone she knew. C.L. heard the police give orders to clear Dolores Street and later Dolores Park, and alleges that she complied with both of those orders but was not able to make her way home because she was blocked by police officers. All three plaintiffs were among a group of around 113 people, mostly minors, surrounded and arrested by police on 17th Street between Dolores Street and Guerrero Street. All were held on the street for a period of hours, then the girls were taken by bus to a nearby police station. The boys were transported by bus or walked with police to the station over the course of the next few hours. The minors were released between 12:00 AM and 4:15 AM with citations after police took their fingerprints. Adults were taken to the county jail and released the next morning with citations. Arrestees were not provided with water, food, or warm clothing, and went extended periods without access to bathrooms. No charges were filed.[2]

Plaintiffs allege that the police lacked probable cause to arrest and subjected them to unreasonable conditions of confinement, bringing claims under the Fourth Amendment and related state law theories of liability. Plaintiffs also asserted claims for racial discrimination, First Amendment retaliation, and violation of fundamental liberty rights, which the Court now dismisses in its concurrent Order.

With respect to establishing a class action, Plaintiffs alleged that the following questions of law and/or fact predominate over any individualized question:

- Whether through the use of police lines and tactics applied to the class generally, the defendants arrested the class representatives and putative class members without probable

---

[2] This summary recites Plaintiffs' allegations as if true, but should not be construed as resolving any issue of fact that might be disputed.

cause;

- Whether the officers who took part in the arrests in question were properly trained in the requirement of individualized probable cause for arrests at a crowd event;

- Whether, where and when Defendants made dispersal announcements and whether Defendants provided directions, means, and opportunity to disperse before trapping and arresting the class and/or trapping people who were dispersing or obeying police orders;

- Whether Defendants engaged in racial discrimination;

- Whether these actions violated the class members' First, Fourth, and Fourteenth amendment rights and their California analogs;

- Did some or all of the conduct described above constitute a policy or custom of Defendant SAN FRANCISCO;

- Whether any individual defendants are entitled to qualified immunity on the federal claims;

- Whether any of the conduct alleged herein violated Cal. Civil Code, §§ 52.1 and/or 51.7;

- Whether general class wide damages are available; and

- Whether statutory damages under § 52.1 are available.

ECF No. 24 (FAC) ¶ 82.

## III. ANALYSIS

### A. Legal Standard for Motion to Strike Class Allegations

Rule 23 grants courts discretion to consider questions of class certification at various stages of a case, on motions by either a party seeking certification or a party opposing class treatment. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939–41 (9th Cir. 2009). "Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009). "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). "[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* (internal quotation marks

omitted).

"Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Mag Instrument, Inc. v. JS Prods., Inc.*, 595 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008). Courts have "authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained." *Herrera v. Cathay Pac. Airways Ltd.*, No. 20-cv-03019-JCS, 2021 WL 673448, at *4 (N.D. Cal. Feb. 21, 2021). This approach, rather than the usual procedure of considering class certification after some degree of discovery, is generally reserved for "obvious deficiencies" that are "facially apparent from the pleadings." *Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112, at *9 (N.D. Cal. June 15, 2015). The purpose of Rule 12(f) is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Nguyen v. CTS Elecs. Mfg. Sols. Inc.*, No. 13-CV-03679-LHK, 2014 WL 46553, at *3 (N.D. Cal. Jan. 6, 2014) (citing *Whittlestone*, 618 F.3d at 973).

Rule 23(a) requires a party seeking class certification to show that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). An additional "implied prerequisite to class certification is that the class must be sufficiently definite; the party seeking certification must demonstrate that an identifiable and ascertainable class exists." *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011). "In short, a party must show numerosity, commonality, typicality, adequacy, and ascertainability." *Kazi v. PNC Bank, N.A.*, No. 18-cv-04810-JCS, 2020 WL 607065, at *3 (N.D. Cal. Feb. 7, 2020). Of those requirements, Defendants dispute Plaintiffs' showing of ascertainability and typicality in their Motion, and also address commonality in their Reply.

A party must also satisfy at least one prong of Rule 23(b). Plaintiffs' Amended Complaint

asserts that they meet all three of those requirements. FAC ¶¶ 91–94. Defendants' present Motion addresses only Rule 23(b)(3), which requires a party seeking certification to show that common questions predominate over any individual issues. Such arguments, which address the list of purportedly common questions presented in Plaintiffs' Amended Complaint, also potentially implicate the commonality requirement of Rule 23(a)(2)—a requirement not specifically addressed in Defendants' Motion, but discussed in somewhat more detail in Plaintiffs' Opposition and Defendants' Reply.

### B. Ascertainability

Plaintiffs define their proposed class as "all persons who were arrested in the 3500 block of 17th Street, San Francisco, on July 8, 2023, the mass arrest that occurred at approximately 8:40pm." FAC ¶ 79. Defendants argue that the class is not ascertainable because Plaintiffs have "omitted from the definition . . . the gravamen of their claims," that class members were arrested without probable cause. ECF No. 44 at 5. Defendants contend that "each individual that participated in the violence, vandalism, incited the riot, or intentionally defied police orders to disperse, is decidedly not part of the class because that obviously gives rise to probable cause". *Id.* at 5–6. In Defendants view, determining which arrestees were arrested with probable cause would require difficult individualized inquiries, so the class is not ascertainable.

As Plaintiffs note in their Opposition, however, the class that they have defined is readily ascertainable: all people arrested in a given place at a given time. The cases on which Defendants rely do not stand for the proposition that a defendant can redefine a class to focus on issues the defendant believes are salient, and then object to that new definition as unascertainable. Instead, most of them involve definitions *offered by plaintiffs* that turn on distinctions that courts found to be not readily identifiable. See *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) ("A class made up of 'residents of this State active in the 'peace movement' . . .' does not constitute an adequately defined or clearly ascertainable class . . . ."); *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) ("[T]he central condition that class members smoked Marlboro cigarettes for at least twenty pack-years nullifies plaintiffs' bid for class certification. There is no good way to identify such individuals."); *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158,

5

1167 (N.D. Cal. 2008) ("*As alleged*, the proposed classes include California persons or entities who purchased Dell computer products that 'Dell falsely advertised.'" (emphasis added)); *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 676, 679–80 (S.D. Cal. 1999) (holding that because the "potential class is restricted to those who bought Defendant's [trading card sets] for the purpose of finding a [specific] card," ascertaining a class would require unmanageable individualized inquiries into state of mind). One case used the heading of ascertainability to instead explain that a class was impermissibly overbroad in that many members would lack Article III standing, which is a separate issue. *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009).

Moreover, it is not clear from Plaintiffs' Amended Complaint that *anyone* who was arrested participated in a riot, engaged in violence, or intentionally defied orders to disperse. As alleged, Defendants ordered the mass arrest of a group of people on the street in a speculative effort to identify perpetrators of property damage that occurred earlier and elsewhere, despite a lack of probable cause to believe anyone in the group was responsible for the damage. FAC, ¶¶ 69, 76. If Defendants in fact ordered a mass arrest without regard for probable cause, it is possible that no individual inquiries would be necessary to determine that all class members were arrested in violation of the Fourth Amendment. That could be true even if some members of the group might in fact have committed a crime, unbeknownst to the arresting officers. "Probable cause must be determined at the time the arrest is made; facts learned or evidence obtained after a stop or arrest cannot be used to support probable cause unless they were known to the officer at the moment the arrest was made." *Hernandez v. City of Napa*, 781 F. Supp. 2d 975, 993 (N.D. Cal. 2011) (cleaned up).

Conversely, as Defendants have argued in support of their Motion to Dismiss, it is also possible that police had probable cause to arrest the group as a whole if the group was acting as a unit to engage in unlawful behavior. *See Lyall v. City of Los Angeles*, 807 F.3d 1178, 1194 (9th Cir. 2015). Depending on what the facts show, the false arrest claim therefore might also be resolved in Defendants' favor without individualized inquiries. As Plaintiffs note in their Opposition, other decisions have certified classes to pursue claims arising from mass arrests. *E.g.*,

6

*Black Lives Matter L.A. v. City of Los Angeles*, No. 2:20-cv-05027-CBM-(ASx), 2022 WL 16888576, at *8 (C.D. Cal. Oct. 3, 2022), *appeal docketed*, No. 22-56161 (9th Cir.); *Spalding v. City of Oakland*, No. C11-2867 TEH, 2012 WL 994644, at *4 (N.D. Cal. Mar. 23, 2012).

Accordingly, even if the Court considers Defendants' arguments on these issues, which come closer to addressing commonality or predominance, under the label of ascertainability, the allegations of the Amended Complaint do not demonstrate that such issues necessarily preclude certification. These questions would be better addressed later in the case on a factual record, where the Court can determine whether they in fact preclude certification.

### C.  Predominance and Commonality

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). It is in some ways similar to Rule 23(a)'s commonality requirement, but "far more demanding." *Id.* at 623–24. That said, Ninth Circuit precedent recognizes "clear justification for handling the dispute on a representative rather than an individual basis if common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," which is sufficient to satisfy Rule 23(b)(3). *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (cleaned up), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022)

As with the "ascertainability" arguments above, Defendants focus their predominance arguments on probable cause. ECF No. 44 at 7; ECF No. 51 at 11. They note that Plaintiffs' Amended Complaint acknowledges questions of "individualized probable cause" and arrests of people "obeying police orders." *Id.* (citing ECF No. 24, ¶ 82). As discussed in the Court's Order on Defendants' Motion to Dismiss, however, the Court agrees with Defendants that "individualized probable cause" is not necessarily required for a mass arrest, potentially rendering questions of probable cause suitable for classwide resolution. Even if individualized probable cause were required, nothing in Plaintiffs' Amended Complaint suggests that Defendants had probable cause to arrest *any* of the putative class members, and (based solely on the Amended Complaint) it is possible that the facts will show that such cause simply did not exist, with no

1  individualized facts to suggest otherwise.  Similarly, nothing in the Amended Complaint reveals
2  that any arrestees disobeyed police.  If the class as a whole was attempting to obey orders to
3  disperse, the question of whether an arrest under such circumstances was appropriate could be
4  suitable for class treatment.

5         As discussed above in the context of ascertainability, these questions are better addressed
6  later in the case on a factual record, which might or might not support Defendants' position that
7  individualized issues preclude certification.  For now, the Court is satisfied that Plaintiffs have
8  sufficiently *alleged* common issues related to the question of probable cause for a mass arrest that
9  predominate over any individualized questions.

10         As noted above, the commonality requirement of Rule 23(a)(2)—which Defendants do not
11  specifically discuss in their Motion but address in their Reply—is similar in some ways to
12  predominance, but less demanding.  *See Amchem*, 521 U.S. at 623–24.  To satisfy commonality,
13  "the plaintiff must demonstrate the class members have suffered the same injury," and that class
14  treatment will generate not just any common questions, but specifically questions to which
15  "common *answers* apt to drive the resolution of the litigation."  *Wal-Mart Stores, Inc. v. Dukes*,
16  564 U.S. 338, 350 (2011) (cleaned up).  So long as it meets that standard, "even a single common
17  question will do."  *Id.* at 359 (cleaned up).  Accordingly, for much the same reason as
18  predominance, the Court is satisfied that Plaintiffs' allegations satisfy the commonality
19  requirement.

20         In Defendants' opening brief, to the extent that any attack on commonality under Rule
21  23(a)(2) is discernable, it appears in Defendants' discussion of predominance, where Defendants
22  summarily challenge Plaintiffs' ten alleged common questions set forth in Paragraph 82 of the
23  FAC.  ECF No. 44 at 7.  In opposition, Plaintiffs argue that they have alleged commonality to
24  satisfy Rule 23(a).  ECF No. 48 at 10.  Defendants' Reply parses out and attacks certain of the
25  alleged common questions.  ECF No. 51 at 11.  Defendants' arguments are unpersuasive.  They
26  depend on mischaracterizing Plaintiffs' allegations.  Defendants wrongly assert that Plaintiffs'
27  "common questions . . . expressly reference questions of whether there was 'individualized
28  probable cause' as to each person arrested."  ECF No. 44 at 7.  Not so.  The alleged common

questions involve tactics generally applied to the class during the incident, prior training programs in which the officers may have participated, dispersal announcements and other treatment that the class received at the hands of the officers, whether certain conduct constituted a policy or custom, and other questions related to qualified immunity, liability, and damages that could be resolved on a common basis. The Court is satisfied that the Amended Complaint meets the relatively low bar of commonality based on the common questions alleged in Paragraph 82 and under at least some potential fact patterns consistent with Plaintiffs' allegations.

### D. Typicality

Ruel 23(a)'s typicality element requires:

> that the named plaintiffs are typical class representatives. Under the rule's permissive standards, representative claims are "typical" if they are reasonably co-extensive with those of absent class members; they need not be substantially identical. A named plaintiff is not typical if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.

*DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1238 (9th Cir. 2024) (cleaned up).

Defendants argue that the named Plaintiffs are not typical of the class because they were not engaged in even arguably expressive activity for the purpose of their First Amendment claim, and because they cannot represent members of racial groups to which they do not belong for the purpose of their Fourteenth Amendment equal protection claim. ECF No. 44 at 9; ECF No. 51 at 13–14. The Court has now dismissed those claims, however, so at least for the moment, any questions of Plaintiffs' typicality to assert them are irrelevant.[3]

Defendants also suggest that Plaintiffs are not typical because they "have defined an overbroad class that include[s] individuals who have not suffered an injury, e.g., individuals that incited the riot or intentionally disobeyed police orders." ECF No. 44 at 8. Whatever the facts might ultimately show, nothing in Plaintiffs' Amended Complaint indicates that any putative class

---

[3] Defendants' Reply raises for the first time differences in the detention experience of girls, boys, and adults, and argues that the minor female Plaintiffs cannot represent boys and adults for claims based on conditions of detention. ECF No. 51 at 13. It is not clear that Plaintiffs seek class treatment for their conditions-of-detention theory. ECF No. 24, ¶¶ 81–83 (identifying common questions, without discussing conditions of confinement). The parties should address this issue more clearly on class certification.

members meet those descriptions.[4]  This issue is not suitable for resolution on a motion to strike.

## IV.  CONCLUSION

For the reasons discussed above, Defendants' Motion to Strike Plaintiffs' class allegations is DENIED, without prejudice to any arguments that Defendants might raise on a factual record.

**IT IS SO ORDERED.**

Dated: June 13, 2024

LISA J. CISNEROS
United States Magistrate Judge

---

[4] Defendants also mischaracterize Plaintiffs' allegations as to Plaintiffs' own involvement, asserting that "Plaintiffs L.R. and C.L. acknowledge they participated in an unlawful assembly, public nuisance, and obstructed the free movement of the public, they heard the police orders to disperse, but claim they could not figure out how to leave the streets for over an hour and a half." ECF No. 51 at 8.  No allegations show that the assembly was "unlawful," that it was a public nuisance, that either L.R. or C.L. obstructed anyone, or that L.R. heard any order to disperse.