UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.T., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>    Defendants. | Case No. 23-cv-06524-LJC<br><br>**ORDER REGARDING DISCOVERY LETTER BRIEFS**<br><br>Re: Dkt. Nos. 58, 59, 74 |

## I. INTRODUCTION

This case concerning an alleged mass arrest (or detention)[1] following the Dolores Hill Bomb, an unsanctioned skateboarding event, in the summer of 2023. Plaintiffs J.T., L.R., and C.L. are three minors who were arrested. Defendants are the City and County of San Francisco and three of its police officials. This Order resolves three joint letters raising discovery disputes. ECF Nos. 58, 59, 74.[2]

This Order is captioned for—and primarily concerns—Case No. 23-cv-06524, which is the case where the parties filed all of the letter briefs at issue. The plaintiff in a related case, *R.P. v. City & County of San Francisco*, No. 24-cv-00522, also joined in at least one of the letter briefs resolved here. *See* ECF No. 59 at 6. The Clerk is therefore instructed to file a copy of this Order in that case as well. This Order will apply in Case No. 24-cv-00522 with respect to any discovery dispute where Plaintiff R.P.'s attorneys signed the joint letter filed with the Court or consented to

---

[1] The Court recognizes that California law, in at least some circumstances, specifically avoids using the word "arrest" to describe the police detention of minors. This Order uses that term in its colloquial sense, without resolving any question of whether the events at issue constituted "arrests" under state law.

[2] The parties have consented to the jurisdiction of a magistrate judge for all purposes under 28 U.S.C. § 636(c).

1    the filing of the joint letter on R.P.'s behalf.  Going forward, the parties are instructed to file

2    copies in both cases of any documents that seek relief in both cases or otherwise pertain to both

3    cases.

4    **II.    ANALYSIS**

5        **A.    The Parties' Disputes that Relate to the Preservation of Relevant Evidence**

6        "As soon as a potential claim is identified, a litigant is under a duty to preserve evidence

7    which it knows or reasonably should know is relevant to the action." *In re Napster, Inc.*

8    *Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006).  The duty to preserve evidence

9    "includes an obligation to identify, locate, and maintain information that is relevant to specific,

10   predictable, and identifiable litigation." *Apple v. Samsung Elecs. Co., Ltd.*, 881 F. Supp. 2d 1132,

11   1137 (N.D. Cal. 2012).  The duty to preserve information pertains only to relevant records. *Id.*

12       As noted above, this case concerns a mass arrest by SFPD following the Dolores Hill

13   Bomb, and Plaintiffs have alleged that Defendants violated their rights and the rights of the

14   putative class under the Fourth Amendment of the U.S. Constitution.  Specifically, Plaintiffs

15   allege that Defendants lacked the necessary justification to institute a mass arrest.[3]  Under Ninth

16   Circuit precedent, however, "[i]f a group or crowd of people is behaving as a unit and it is not

17   possible . . . for the police to tell who is armed and dangerous or engaging in criminal acts and

18   who is not," the police are authorized to detain the members of the group if there is probable cause

19   to believe that the group violated the law. *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1194 (9th

20   Cir. 2015).  The key question is whether the officer's belief at the time "was reasonable in light of

21   the circumstances." *Id.*  The existence of probable cause to make a lawful warrantless arrest is

22   determine based on "the totality of the circumstances known to the arresting officers" and

23   considers whether "officers have knowledge or reasonably trustworthy information sufficient to

24   lead a person of reasonable caution to believe that an offense has been committed or is being

25   committed by the person[s] being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir.

26   2007).  In this case, in particular, a central question will likely be whether Defendants had a

---

[3] Plaintiffs also allege that Defendants subjected them to unlawful conditions of confinement.

2

1 reasonable belief that the group of individuals detained had some connection with individuals who

2 allegedly damaged property earlier in the evening at a different, but nearby location. *See*

3 Corrected Am. Compl., ¶ 76.

4 With these considerations in mind, the Court addresses the parties' disputes regarding their

5 preservation obligations.

### 1. Defendants' Teams Messages

Plaintiffs raised concerns that Defendants had not taken steps to secure messages sent and received by SFPD employees using Microsoft Teams concerning the Dolores Hill Bomb. ECF No. 58 at 1–2. After arguments from both sides concerning this issue, Defendants filed a status report indicating that they had identified and preserved relevant Teams messages. ECF No. 62. The record before the Court does not indicate that relevant messages were lost in the intervening period before Defendants identified and preserved those messages. The Court understands this issue to be resolved, and does not reach the parties' arguments as to when the duty to preserve such messages attached.

### 2. Preservation of Plaintiffs' Devices

#### a. The Named Plaintiffs' Smartphones

The parties first raised a dispute concerning preservation of Plaintiffs' mobile devices in a case management statement and in argument at a case management conference, and the Court issued an Order on May 2, 2024 that included the following instructions regarding mobile devices:

> As for Plaintiffs' obligations, the Court rejects Plaintiffs' apparent position that only Defendants' evidence is relevant to this case. If Plaintiffs proceed on a claim for arrest without probable cause, evidence of their location and activities (which might include location data, photographs, videos, or messages describing such activities) may be relevant to resolve any conflicts between Defendants' and Plaintiffs' accounts of what Defendants observed on the night in question. If Plaintiffs proceed on claims based on conditions of confinement or excessive force, there may be relevant evidence in the form of messages Plaintiffs sent describing such conditions or force, either during their confinement or after the fact. (These examples are intended to be illustrative rather than comprehensive.)
>
> In light of the wide variety of potential evidence contained in a smartphone, and the risks inherent in trusting the retention of such evidence to a small, relatively fragile device carried throughout daily life by a teenager, the Court finds some method of backup imaging of

United States District Court
Northern District of California

3

> each named Plaintiff's phone to be reasonable and proportional to the needs of the case. The Court has not reached a conclusion as to whether forensic imaging is necessary or if commercial backup software might be sufficient. The parties to both cases shall meet and confer in person or by videoconference to identify a specific process to preserve data from Plaintiffs' smartphones, and file no later than May 10, 2024 either a joint statement identifying an agreed process or a discovery letter brief setting forth their respective positions.

ECF No. 56 at 4.

The parties did not reach an agreement and instead filed a joint letter. Plaintiffs do not propose any "specific process to preserve data from [their] smartphones" as required by the Court's previous Order. ECF No. 56 at 4. Instead, they assert:

> Plaintiffs have preserved relevant text messages, photos and videos taken during the events in question. Unfortunately, unbeknownst to counsel, two of the children in the J.T. case got new phones prior to the filing of this lawsuit, and did not keep their old phones, which were not backed up. However, pertinent communications and images have been preserved and can be produced. The remaining Plaintiff (L.R.)'s phone is backed up on iCloud, and she knows to preserve the phone; in addition, the location data from the e-scooter she rented has been preserved. Location data as to J.T. and C.L. is unnecessary; there is no dispute concerning these plaintiffs' locations. Plaintiffs will testify that they reached the mass arrest location by walking the same route as most others, the only route the police allowed them to go once SFPD closed Dolores Street and Dolores Park

ECF No. 58 at 2.

Defendants, in turn, propose a full court press of forensic investigation:

> In light of the above, we request an order compelling all named Plaintiffs to turn electronic devices (as identified in ECF 56 at 4:16-5:11) over to a third-party forensic vendor for imaging immediately, with a requirement that the juveniles provide all passwords and access codes to all social media and cloud-based communication apps. We request that the vendor provide a report to all parties and the Court as to whether any data from July 8 and 9, 2023 has been deleted or removed from the devices and that counsel interview their clients pursuant to the Court's order and provide declarations from each regarding their devices (ECF 56 at 5:7-11). The request as to the gaming devices is subject to the Court's order, which provided that preservation of the gaming devices need not include a complete backup imaging "so long as other reliable methods are available to preserve all such messages." ECF 56 at 510-11. Because counsel have delayed and now seek to defy the Court's Order, we also request the Court order plaintiffs to provide all telephone carrier records and all handles, names and identities of each of the Plaintiffs' social media (e.g. Instagram, TikTok, Facebook, Snapchat, Signal, Telegram, WhatsApp, Discord, Twitch).

ECF No. 58 at 6.

4

Neither party's approach is a reasonable response to this Court's previous Order. Plaintiffs propose no process to preserve their devices, other than an iCloud backup of one out of the three plaintiffs' smartphones, for which they have provided no information concerning what that process captures. Defendants propose an extensive and presumably expensive forensic examination with no indication either that any relevant evidence likely to be captured by that process would not be captured by less intrusive means, or that Plaintiffs have maliciously destroyed relevant evidence. Furthermore, there is a strong privacy interest in the contents of mobile phones, and in the course of discovery, privacy considerations are generally weighed through either the Rule 26(b) proportionality analysis or as part of Rule 26(c) protective orders. *Jones v. Riot Hosp. Grp., LLC*, 95 F.4th 730, 737 (9th Cir. 2024). Courts in this district have recognized that modern cellphones hold substantial "amounts of personal data, including private communications, photos, location data, and other sensitive information." *In re Soc. Media Adolescent Addiction/Pers. Injury Prods. Liab. Litig.*, No. 22-md-03047-YGR (PHK), 2024 WL 3498235 (N.D. Cal. July 19, 2024) at *3 (collecting cases). Defendants also apparently seek an order for production of "telephone carrier records" and social media information from Plaintiffs as a form of discovery sanction, rather than simply requesting production of such information through the normal discovery process if they believe it to be relevant.

The Sixth Circuit has offered a thoughtful summary of issues implicated by requests for forensic imaging, albeit at a time when such imaging was more likely to concern computers than smartphones:

> To be sure, forensic imaging is not uncommon in the course of civil discovery. A party may choose on its own to preserve information through forensic imaging, and district courts have, for various reasons, compelled the forensic imaging and production of opposing parties' computers. Nevertheless, courts have been cautious in requiring the mirror imaging of computers where the request is extremely broad in nature and the connection between the computers and the claims in the lawsuit are unduly vague or unsubstantiated in nature. As the Tenth Circuit has noted, albeit in an unpublished opinion, mere skepticism that an opposing party has not produced all relevant information is not sufficient to warrant drastic electronic discovery measures. And the Sedona Principles urge general caution with respect to forensic imaging in civil discovery:

> Civil litigation should not be approached as if information systems were crime scenes that justify forensic investigation at every opportunity to identify and preserve every detail.... [M]aking forensic image backups of computers is only the first step of an expensive, complex, and difficult process of data analysis that can divert litigation into side issues and satellite disputes involving the interpretation of potentially ambiguous forensic evidence.
>
> Thus, even if acceptable as a means to preserve electronic evidence, compelled forensic imaging is not appropriate in all cases, and courts must consider the significant interests implicated by forensic imaging before ordering such procedures. Cf. Fed.R.Civ.P. 34(a) Advisory Committee Note (2006) ("Courts should guard against undue intrusiveness resulting from inspecting or testing [electronic information] systems.").

*John B. v. Goetz*, 531 F.3d 448, 459–60 (6th Cir. 2008) (cleaned up).[4]

Here, the Court has already found certain data on Plaintiffs' smartphones—or at least the phones they had at the time of the Dolores Hill Bomb—may become relevant to resolve factual disputes that may arise with respect to Plaintiffs' location, activities, and perceptions during the events at issue, and the Court has identified accidental risk of loss or destruction as a concern. ECF No. 56 at 4. That two of the three Plaintiffs in the *J.T.* case already replaced their phones after the events at issue and before the onset of this litigation underscores the risk that phones might be lost if steps are not taken to preserve them. *See* ECF No. 58 at 2. The Court also has concerns that Plaintiffs may have taken an unduly cramped approach to potential relevance, given their unilateral assertions that their locations on the night in question are both irrelevant and undisputed, ECF No. 58 at 2, even after the Court has held that such information "may be relevant to resolve any conflicts between Defendants' and Plaintiffs' accounts of what Defendants observed on the night in question," ECF No. 56 at 4. Plaintiffs' position on relevance calls into question whether a preservation strategy that relies wholly on Plaintiffs' identification of potentially relevant evidence is sufficient.

In the Court's view, though, those concerns do not warrant treating Plaintiffs' smartphones

---

[4] The relevant portion of the Sedona Principles cited in *John B.* is retained in the most version of that document, published ten years later. *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 112 (2018), *available at* https://thesedonaconference.org/sites/default/files/publications/The%20Sedona%20Principles%20Third%20Edition.19TSCJ1.pdf.

as "crime scenes that justify forensic investigation at every opportunity to identify and preserve every detail." *Cf. John B.*, 531 F.3d at 460. Instead, the goal here is to take reasonable measures to ensure that evidence from Plaintiffs' smartphones that Plaintiffs may have failed to recognize as relevant is not inadvertently lost if it later becomes apparent that, say, issues Plaintiffs believed to be undisputed are contested, that applications they did not consider searching contain relevant data or communications, or that relevant evidence was otherwise overlooked.

The Court therefore ORDERS as follows. No later than August 21, 2024, Plaintiffs shall either: (1) turn over their smartphones to their attorneys for safekeeping for the duration of this litigation;[5] or (2) back up data from their smartphones, with the backup data to be retained by Plaintiffs or their attorneys for the duration of this litigation. If Plaintiffs elect to rely on backup data, then either: (1) Plaintiffs must engage a vendor to create a complete backup image of the device, and disclose to Defendants the name of the vendor and the scope of work performed; or (2) if Plaintiffs believe that a complete backup image would be substantially more expensive than a targeted backup of all sources of photographs, videos, communications, and location data that might concern the events in question, Plaintiffs must meet and confer with Defendants to identify all such sources of data that will be preserved from each smartphone.[6] To be clear, the scope of preservation is distinct from the scope of production, and the Court will not order production of complete forensic records of Plaintiffs' devices. *See, e.g.*, *In re Soc. Media*, 2024 WL 3498235, at *2–4 (ordering selective rather than wholesale production even in a case where, unlike here, the plaintiffs' use of their devices was directly at issue).

Any such meet-and-confer process must begin no later than August 19, 2024, and Plaintiffs

---

[5] The Court recognizes that the approach of retaining a smartphone in safe location falls somewhat short of a forensic image in that temporary data may be lost through the phone's normal operation. The only such data that Defendants have identified as potentially relevant, however, is "geotracking data." Defense counsel asserted at the April 30, 2024 hearing and case management conference that such data "is lost within one month if you don't preserve it," or in other words, well before this litigation began. ECF No. 65 at 58:9–12. There is no reason to impose additional costs now in an effort to preserve data that would have already been deleted.

[6] The Court notes that the principal consideration for Plaintiffs' wrongful arrest claims is what was known to the officers at the time of the mass arrest. Although evidence from Plaintiffs' smartphones might relevant to that inquiry—or to the conditions of their confinement, or perhaps to damages—it is not likely to be the focus of this case.

7

1    must begin the process of preserving data that is not subject to dispute no later than August 21,
2    2024 if discussions are ongoing.  If certain applications pose particular challenges for backing up
3    data (due to encryption, for example), preserving the *substance* of potentially relevant data from
4    such sources through less-than-forensic means may be appropriate, but Plaintiffs should make
5    clear to Defendants what steps they are taking to do so.  In the unfortunate event that the parties
6    feel compelled to raise a further dispute to the Court on this issue, Plaintiffs must make clear what
7    steps they have taken or agreed to take to preserve potentially relevant evidence, and Defendants
8    must provide an estimated cost from a vendor for whatever further steps Defendants believe are
9    necessary.

10   This Order applies to all Plaintiffs.  Although J.T. and C.L. have apparently disposed of the
11   phones that they owned at the time of the Dolores Hill Bomb, their current smartphones are still
12   likely to contain communications about their experience and potentially other relevant evidence,
13   and the Court is not inclined to relieve them of responsibilities applicable to others based on their
14   prior failure to preserve a potentially relevant source of evidence.

15   Regardless of how Plaintiffs intend to preserve relevant data from their devices, Plaintiffs
16   must produce to Defendants no later than August 19, 2024 a list of every model number of every
17   relevant mobile device with data to be preserved by Plaintiffs, the version number of the operating
18   system installed on each relevant device, and a list of all applications which are currently on each
19   relevant device, in order to inform the parties' discussions of either the scope of preservation (if
20   Plaintiffs choose to pursue a targeted backup) or the production of relevant information.

21   It is too soon to say whether the loss of those two Plaintiffs' phones, Plaintiffs' failure to
22   take steps to preserve any potentially transient location data, or any other loss of information
23   might constitute spoliation.  Among other reasons that question is premature, it is not clear at this
24   stage whether any relevant data that relates to any issue that is actually in dispute was actually lost.
25   In the absence of a ripe dispute, the Court declines to resolve at this time whether Plaintiffs'
26   conduct violated their duty to preserve potentially relevant evidence.  If Defendants come to
27   believe that information relevant to a disputed issue was lost through Plaintiffs' wrongful failure
28   to preserve it, they can raise that issue at an appropriate later stage of the case.

### 3. Other Members of the Putative Class

Defendants also requests that the Court "order counsel for [Plaintiffs to] order all 40 juveniles that she has spoken with and/or purports to represent to turn over their electronic devices to a third-party vendor immediately for preservation," or to provide confirmation in writing that those "individuals have declined representation and they have no interest in participating in this lawsuit." ECF No. 58 at 6. Defendants later renewed that request in a "status report." ECF No. 62 at 3. The City cites no authority for the extreme step of ordering non-parties, who might—or might not—be absent class members if a class is later certified, to forensically back up their personal electronic devices. If additional detainees at the Dolores Hill Bomb are contemplating litigation, they have an obligation to take reasonable steps to preserve relevant evidence, and loss of relevant evidence due to any failure on their part to do so might have consequences for those individuals' claims should they ever bring them. But they are not currently parties to this case. Assuming for the sake of argument that the Court has authority to issue such an order (which is far from clear), the Court finds that such extreme measures are not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). That request is DENIED.

### 4. Gaming Devices

The Court's previous Order also raised potential concerns about relevant messaging through game systems, as distinct from smartphones. The Court directed "counsel in both the *J.T.* and *R.P.* cases [to] ask the individual Plaintiffs if they communicated about the incidents at issue in this case using any gaming console or platform, and if they did, [to] take steps to preserve any messages that may be relevant to the claims and relief sought." ECF No. 56 at 5. The Court specifically noted that Plaintiffs need not create "complete backup images of gaming devices, so long as other reliable methods are available to preserve all such messages." *Id.* Plaintiffs have represented that "[n]one of the *J.T.* Plaintiffs use videogame devices for communication," and that in the related case, "R.P. will preserve . . . any relevant videogame messaging platform and has preserved the relevant messaging related to this incident." ECF No. 58 at 2. Because Plaintiffs have complied with the Court's previous Order as to gaming devices, the Court considers that issue resolved. To the extent Defendants seek an order requiring forensic preservation of messages from gaming devices, ECF No.

58 at 6, that request is DENIED.

## B. Production of Juvenile Records

The parties dispute the extent to which Plaintiffs may obtain juvenile detention records from the San Francisco Police Department. *See generally* ECF No. 59. Defendants invoke restrictions on juvenile court and detention records under state law. Plaintiffs argue that those restrictions are not applicable to the records at issue and that this Court has, and should exercise, authority to order disclosure of relevant discovery notwithstanding state law. The parties proposed competing stipulations that would, among other provisions, call for Plaintiffs to hold Defendants harmless for producing the records at issue. ECF Nos. 59-1, 59-2. For the reasons discussed below, Defendants are ORDERED to produce the documents at issue notwithstanding Plaintiffs' own rights to privacy under state law, so long as Plaintiffs enter a stipulation consistent with this Order.

State law provides at least some protection from disclosure of minors' arrest or detention records, although the scope of such protection is not entirely clear, particularly where minors seek disclosure of their own records to their attorneys for use in a civil action. The California Supreme Court has held that the collective effect of several provisions of the state Welfare and Institutions Code, including section 827, "establish the confidentiality of juvenile [quasi-criminal] proceedings and vest the juvenile court with exclusive authority to determine the extent to which juvenile records may be released to third parties," with such confidentiality generally extending to the fact of a detention that never resulted in further proceedings. *T.N.G. v. Superior Court*, 4 Cal. 3d 767, 778–80 (1971). Records from juvenile court proceedings are usually available for inspection by the minor at issue and their parents or guardians, as well as attorneys "actively participating in criminal or juvenile proceedings involving the minor" and attorneys appointed to represent the minor in family law cases, among other categories of interested persons not at issue here. Cal. Welf. & Inst. Code § 827(a)(1)(C), (D), (L). Anyone not granted access to such records by law may petition a judge of the juvenile court for access. *Id.* § 827(a)(1)(Q).

Section 827.9 of the Welfare and Institutions Code sets specific procedures for access to law enforcement "relating to the taking of a minor into custody, temporary custody, or detention

10

1  (juvenile police records)," as distinct from juvenile court records specifically governed by section

2  827.  Cal. Welf. & Inst. Code § 827.9(a).  Those would seem to be the only records at issue in this

3  case, where Plaintiffs assert that "no juvenile allegations were ever filed against any of the plaintiffs

4  and putative class members, but the police presumably have records related to the arrests."  ECF No.

5  53 at 7.  Under section 827.9, minors, their parents, and their lawyers[7] are entitled to copies of

6  juvenile police records (with identifying information of other minors redacted) upon request to a

7  law enforcement agency, without involvement by a juvenile court.  Cal. Welf. & Inst. Code

8  § 827.9(c).  As this Court has previously noted, however, the Legislature provided that section

9  827.9 "shall only apply to Los Angeles County."  *Id.* § 827.9(p); *see* ECF No. 66 at 33.[8]  The

10 statute leaves an open question of how such records should be treated elsewhere.[9]

11      To the extent that release of such records might require approval by a juvenile court,

12 Defendants correctly note that a California appellate court has held, as a matter of state law, that a

13 state juvenile court cannot delegate its authority regarding the confidentiality of juvenile court

14 records to a federal judge.  *In re Anthony H.*, 129 Cal. App. 4th 495, 502 (2005).  The question

15 here, though, is not whether any state court can refer questions of disclosure under state law to this

16 federal court—which no state court has purported to do—but instead whether this Court has

17 authority to compel disclosure pursuant to the Federal Rules of Civil Procedure notwithstanding

18 state law to the contrary.  The Ninth Circuit has stated that it does.  *Gonzalez v. Spencer*, 336 F.3d

19 832, 835 (9th Cir. 2003), *abrogated on other grounds by Filarsky v. Delia*, 566 U.S. 377, 132 S.

---

[7] Unlike section 827, nothing in section 827.9 limits the "attorneys" to whom disclosure is authorized to attorneys specifically acting in the context of a juvenile court proceeding.  *Compare* Cal. Welf. & Inst. Code § 827(a)(1)(E) *with id.* § 827.9(c)(3).

[8] *J.T. v. City & County of San Francisco*, No. 23-cv-06524-LJC, 2024 WL 3012791, at *19 (N.D. Cal. June 13, 2024).

[9] Two unpublished and non-precedential California appellate decisions have cited section 827.9 in matters concerning other counties, without addressing subpart (p)'s limitation to Los Angeles County.  *Zizzo v. Dep't of Hous. & Cmty. Dev.*, No. D063563, 2014 WL 2195035, at *8 (Cal. Ct. App. May 27, 2014) (San Diego County, finding the plaintiff's argument that a hearing officer violated section 827.9 unfounded where the hearing officer sustained the plaintiff's objection based on that statute and did not consider juvenile arrest records); *In re A.G.*, No. G044949, 2012 WL 2950382, at *8 (Cal. Ct. App. July 20, 2012) (Orange County, finding section 827.9 inapplicable based on an express exemption for records involving minors who are witnesses or victims).  To the extent those decisions might have assumed that section 827.9 applied outside of Los Angeles County notwithstanding subpart (p), they offer no reasoning to support that conclusion.

1     Ct. 1657 (2012).

2           In *Gonzalez*, the Ninth Circuit reversed dismissal of a claim that an attorney violated a

3     plaintiff's rights by improperly accessing his juvenile court records, holding that "[a]lthough *the*

4     *district court could have ordered disclosure notwithstanding state law*, the file was still

5     presumptively protected until it did." *Id.* (emphasis added) (citing a leading treatise). Defendants

6     assert that the Ninth Circuit has since "held that Gonzalez was 'opaque' and should be afforded

7     little precedential weight." ECF No. 59 at 5 (citing *A.C. ex rel. Park v. Cortez*, 34 F.4th 783, 786–

8     87 (9th Cir. 2022); *Nunes v. Arata, Swingle, Van Egmond & Goodwin (PLC)*, 983 F.3d 1108,

9     1113–15 (9th Cir. 2020)). But the cases cited by Defendants critiqued *Gonzalez*'s implied finding

10    of a federal right to privacy of state juvenile records sufficient to support a claim under 42 U.S.C.

11    § 1983. Those decisions do not dispute—or even mention—*Gonzalez*'s recognition that federal

12    courts have authority to order disclosure notwithstanding state law. *A.C.*, 34 F.4th at 786–87;

13    *Nunes*, 983 F.3d at 1113–14.

14          Defendants also cite the abstention doctrine of *Younger v. Harris*, 401 U.S. 37 (1971), and

15    related authority cautioning federal courts against interference with state court proceedings, *E.T. v.*

16    *Cantil-Sakauye*, 682 F.3d 1121, 1123 (9th Cir. 2012), but Defendants do not identify any actual

17    state court proceedings implicated by Plaintiffs' requests for production. ECF No. 59 at 4.

18    Defendants cite no authority applying *Younger* abstention to prevent discovery of relevant

19    evidence.

20          Although *Gonzalez*'s discussion of federal courts' authority was dicta, it has not proven

21    controversial. Several district courts have held that in cases brought under federal law, federal

22    courts have the power to order disclosure of juvenile records notwithstanding section 827 of the

23    California Welfare and Institutions Code and related state law privacy protections where

24    appropriate to the needs of a case, taking into account public and private interests in the

25    confidentiality of such documents. *See e.g.*, *Meyer v. County of San Diego*, No. 21-cv-341-RSH-

26    BLM, 2024 WL 86603, at *5 (S.D. Cal. Jan. 8, 2024); *Bradley v. County of Sonoma*, No. 19-cv-

27    07464-KAW, 2020 WL 13972462, at *2–5 (N.D. Cal. July 23, 2020); *Doe No. 59 v. Santa Rosa*

28    *City Sch.*, No. 3:16-cv-01256-WHO, 2017 WL 11837754, at *2 (N.D. Cal. Mar. 1, 2017);

United States District Court
Northern District of California

*Maldonado v. Sec'y of Cal. Dep't of Corr. & Rehab.*, No. 2:06CV02696-MCE/GGH, 2007 WL 4249811, at *5 (E.D. Cal. Nov. 30, 2007). Defendants cite no decision by a federal court to the contrary. Although the circumstances of this case are not identical to those prior decisions, this Court finds that to the extent disclosure of the records Plaintiffs seek might be barred under California law, compelling interests warrant disclosure notwithstanding state law protections.

The Court finds three circumstances in this case to be of particular importance. First, the records at issue are extremely relevant to Plaintiffs' claims, which turn on the circumstances of their arrest. Second, Plaintiffs seek only their own arrest records, and at least for now do not object to Defendants redacting personally identifying information of other minors who were arrested. In doing so, they seek records that the California Legislature has found appropriate for release to minors, their parents, and their lawyers without involvement of a juvenile court in at least one county—suggesting that although the Legislature may not have settled on a statewide procedure, it does not consider such consensual disclosure a fundamental violation of minors' privacy rights. *See* Cal. Welf. & Inst. Code § 827.9(c). Third, Defendants assert that they "have no objection to Plaintiffs obtaining their 'arrest' records." ECF No. 59 at 3. Defendants object only to the means by which Plaintiffs have sought them, and seek to ensure that Plaintiffs will hold Defendants harmless from any potential violation of state law in producing those records. Defendants agreed to produce documents if Plaintiffs signed a stipulation, but Defendants' proposed stipulation goes far beyond the asserted need to protect them from liability for producing documents.

Defendants' proposed stipulation would require Plaintiffs to forfeit *any* claim to confidentiality of the juvenile records at issue under a wide range of state laws, notwithstanding that Plaintiffs have not proposed any public disclosure of the documents they request. ECF No. 59-1 at 2. Defendants ask Plaintiffs to acknowledge Plaintiffs' counsel's previous disclosures of Plaintiffs' identities in public court filings and to the press. *Id.* Although Defendants are correct that Plaintiffs' counsel initially filed Plaintiffs' names in the public record, the Court has since sealed those filings, and that erroneous disclosure of Plaintiffs' names is no reason to withhold production of Plaintiffs' arrest records. Whether counsel also disclosed Plaintiffs' names to the

13

1 press is not apparent from the record before the Court, but also has no bearing on document
2 production. Defendants ask Plaintiffs to acknowledge that they will waive any right to protection
3 of their identity in this litigation once they reach eighteen years of age, *id.*, but any question of
4 whether to allow Plaintiffs to continue to proceed under pseudonyms beyond their eighteenth
5 birthday is for the Court to determine,[10] and—again—has no bearing on whether Plaintiffs' arrest
6 records should be produced or can be publicly disclosed. Defendants ask that Plaintiffs immunize
7 them from any possible claim related to disclosure of records in this litigation, *id.* at 3, suggesting
8 that Plaintiffs would be barred from pursuing sanctions if Defendants violated the protective order
9 that has since been entered. And Defendants seek as part of their stipulation an agreement that
10 Plaintiffs will "provide photo identification, all geotracking and geolocation, and all photos and
11 videos of themselves on July 7-10, 2023" within one week of entering the stipulation, as a
12 precondition before Defendants would produce Plaintiffs' arrest records. *Id.* Defendants'
13 apparent intent to withhold Plaintiffs' records unless and until Plaintiffs produced other
14 discovery—including *all* photographs, videos, and geolocation data Plaintiffs have from not only
15 the days of the events in question (July 8th and 9th), but also the days before and after those
16 events—calls into question whether Defendants' stated concerns about Plaintiffs' privacy and
17 rights under state law are the only reasons Defendants have resisted producing these documents.

18    That said, it is reasonable for Defendants to seek Plaintiffs' express agreement to authorize
19 Defendants' production of these documents to Plaintiffs and their counsel, as well as Plaintiffs'
20 waiver of any claim that such production violates Plaintiffs' rights under state law. To allow the
21 parties equal use of potentially relevant evidence, Plaintiffs must further stipulate that Defendants
22 may use and file Plaintiffs' juvenile records in this litigation in the same manner as documents

---

[10] Rule 5.2(a) of the Federal Rules of Civil Procedure requires that minors be identified only by their initials in public filings. In an abundance of caution, and to allow reasoned consideration of the issue, Defendants are ORDERED to continue to refrain from filing Plaintiffs' names in the public record after Plaintiffs reach the age of eighteen without leave of the Court. If Plaintiffs wish to proceed under their initials as pseudonyms after they reach the age of majority, they are encouraged to file a motion to that effect before that date occurs. If Plaintiffs do not file such a motion before they turn eighteen, Defendants may file a motion for leave to use Plaintiffs' names. The Court has reached no opinion at this time as to whether leave to continue using pseudonyms would be granted.

14

designated "confidential" under the protective order.  Upon entry of such a stipulation, Defendants are ORDERED to produce any documents that Defendants previously withheld from production based on the privacy of Plaintiffs' juvenile records under state law, and to produce documents notwithstanding such protections going forward.  Defendants are further ORDERED not to disclose such records in conjunction with this litigation except as allowed for documents designated "confidential" under the protective order.  Neither this Order nor the contemplated stipulation shall affect any existing rights or restrictions on Defendants' ability to disclose Plaintiffs' juvenile records outside of this litigation.

The parties are ORDERED to meet and confer and file a stipulation consistent with this Order no later than August 21, 2024.  Such a stipulation shall include an agreed deadline for production of the documents at issue.  If the parties cannot agree to language of the stipulation or a deadline for production, they shall file a joint statement not exceeding one page by the same deadline alerting the Court that they failed to reach an agreement, and the Court will set a date for the parties to meet and confer in person at the courthouse.

Both sides raised procedural objections to their opponents' sections of the joint letter on this issue and accused their opponents of belatedly adding new arguments.  ECF No. 59 at 1; ECF Nos. 60, 61.  Defendants requested additional briefing on a noticed motion.  ECF No. 59 at 1. That request is DENIED.  The parties' dispute here boils down to appropriate terms of a stipulation to protect Defendants from potential liability to Plaintiffs for complying with Plaintiffs' discovery requests.  The parties and the Court have already expended far more time on this issue than should have been necessary to resolve it.  The Court declines to apportion fault for the breakdown in preparing this joint letter, but expects all parties to do better in the future.

### C. Production of BWC Video

Plaintiffs have requested production of police body-worn camera video recordings (BWC Video) taken during the Dolores Hill Bomb and the ensuing arrests.

Defendants seek to limit that production to videos depicting the individual Plaintiffs in this case, to require Plaintiffs "to produce their mobile devices and geotracking data to assist [Defendants] in locating them in the video," and redact or blur faces of third parties in the video.

*See* ECF No. 74 at 1. Defendants assert that it will take them more than six months to review the approximately 450 hours of BWC Video at issue, identify video depicting Plaintiffs, redact images of other minors, "and include appropriate confidentiality designations." *Id.* at 2. Defendants contend that BWC Video at issue is restricted from disclosure under California law because it pertains to the arrest of minors, and suggest that the protective order the Court previously entered is not sufficient to protect non-parties' privacy interests because parties in other cases have disclosed BWC Video in violation of protective orders. *Id.* at 1–2.

Plaintiffs contend that this Court has already considered the production of BWC Video depicting arrests of minors in a previous order resolving the parties' dispute regarding provisions of a protective order, and that Defendants should be required to produce all BWC Video from the events at issue because it is relevant to class certification. *Id.* at 3–4.[11]

The Court previously held that the "mere fact that BWC Video depicts identifiable non-party minors being arrested or detained does not warrant [attorneys'-eyes-only] designation" because minors who were arrested had a limited expectation of privacy in video recordings of events on a public street, and a less restrictive designation of "confidential" was sufficient to protect that limited interest. ECF No. 69 at 2–3. The Court's reasoning in that Order forecloses Defendants' argument that video of identifiable minors should not be produced at all. Contrary to Defendants' contention that the previous Order's "hypothetical discussions about BWC appeared to assume BWC of plaintiffs," ECF No. 74 at 3, the Court specifically addressed video of "*non-party* minors," ECF No. 69 at 3 (emphasis added). And although Defendants now argue that "the magnitude and complexity of the privacy interests in the BWC was not before the Court," ECF No. 74 at 3, Defendants specifically argued in that previous dispute that non-party minors' privacy interests and California law restricting disclosure of juvenile court records supported their view on broad attorneys'-eyes-only designation for BWC Video of minors, ECF No. 68 at 1–2, which the

---

[11] Plaintiffs also argue that this letter brief is improper because the Court directed the parties to cease briefing on other discovery disputes previously submitted regarding confidentiality of juvenile records. ECF No. 74 at 3. The Court does not find this letter to be a violation of that previous directive. Although this letter implicates some issues raised elsewhere, the question of whether Defendants must produce all BWC Video of the event, as opposed to only video depicting Plaintiffs, is distinct and warrants resolution.

1    Court rejected.

2        Defendants cite no authority, either here or in that previous dispute, treating BWC Video
3    of minors' arrests as a juvenile court records subject to the strict confidentiality provisions of the
4    Welfare and Institutions Code, particularly where such video was captured on a public street.  As
5    to BWC Video more generally, Defendants cite cases holding redactions or blurring appropriate
6    under some circumstances before video previously produced under a protective order can be
7    released *publicly*, but cite no case requiring such treatment before the video is produced under a
8    protective order.  ECF No. 74 at 1–2.  Whatever privacy interest non-party minors have in such
9    video is sufficiently guarded by the protective order in this case.

10       Defendants cite two cases where parties violated protective orders, but such violations do
11   not support an inference that Plaintiffs here are likely to violate the protective order.  Notably, the
12   court in one of those cases held that the BWC Video at issue *should* be released publicly and did
13   *not* warrant confidential treatment, but sanctioned the plaintiff's attorney for releasing it in
14   violation of the protective order without first seeking and obtaining that ruling.  *See generally*
15   *Harmon v. City of Santa Clara*, 323 F.R.D. 617 (N.D. Cal. 2018).  In the other case, contrary to
16   Defendants' parenthetical summary that it involved "sanctions on plaintiff's counsel for leaking
17   confidential BWC," ECF No. 74 at 2, the court issued sanctions for releasing deposition testimony
18   designated as confidential, not BWC Video.  The court noted that an accompanying release of
19   BWC Video was "not in dispute," suggesting that it was not designated confidential under the
20   protective order.  *I.F. v. City of Vallejo*, No. 2:18-cv-0673-JAM-CKD, 2021 WL 601054, at *4
21   (E.D. Cal. Feb. 16, 2021).  Regardless, and as should go without saying, appropriate sanctions will
22   issue if any party violates the protective order in this case.

23       As discussed above in the context of Plaintiffs' own records, this Court has authority to
24   order production of discovery notwithstanding protections of state law.  Even if state law restricts
25   disclosure of BWC Video depicting the arrest of minors, production is warranted here in light of
26   considerations including: (1) the relatively limited privacy interest of minors arrested in a large
27   group on a public street; (2) the limited intrusion of any such privacy interest that would be
28   imposed by production to co-arrestees under the terms of the protective order in this case; and

(3) the relevance of video evidence of the mass arrest at issue to Plaintiffs' claims. Plaintiffs are correct that BWC Video of the event generally—and not only of the individual Plaintiffs—will likely be relevant to their anticipated motion for class certification. Identifying specific individuals across different videos may also be highly relevant to show whether a mass arrest was justified by probable cause to believe that a group of people that includes such individuals, "behaving as a unit," likely violated the law. *See Lyall*, 807 F.3d at 1194 (discussing the standard for assessing reasonable suspicion on a group basis rather than an individualized basis). Even if class certification is denied, video of the event as a whole could therefore be relevant to whether Plaintiffs can prevail on their individual claims that Defendants arrested them without probable cause. *See* ECF No. 42 at 24 (Defendants' Motion to Dismiss, arguing that Plaintiffs' arrests should be analyzed under *Lyall*'s framework of group suspicion).

Accordingly, Defendants are ORDERED to produce BWC Video in response to Plaintiffs' requests for production, without limitation to video depicting the individual Plaintiffs. Defendants may not redact, blur, or withhold BWC Video based merely on depictions of the detention of non-party minors. This Order does not alter the Court's previous Order allowing for attorneys'-eyes-only designation of BWC Video in limited circumstances. ECF No. 69.

The Court recognizes that disclosure of BWC Video could reveal the fact that specific juveniles were detained, which the California Supreme Court has treated as subject to at least some degree of protection under state law. *T.N.G.*, 4 Cal. 3d at 780–81 (holding that a juvenile "who has been temporarily detained by the authorities and subsequently released without further proceedings" may deny having been arrested or detained if questioned by a prospective employer, and upholding a juvenile court's policy of not disclosing such information). The purpose of the protective order in this case is to prevent disclosure of material and information designated as confidential, at least in the absence of a court order authorizing such disclosure. Lest there be any doubt, that applies equally where Plaintiffs or their counsel learn that a juvenile was detained from BWC Video designated as confidential. Plaintiffs may not disclose the fact of such detention except as provided by the protective order.

This Order presumes that the BWC Video at issue depicts events occurring in public view,

1    or in temporary detention settings with large numbers of detainees (such as the buses and holding
2    areas discussed in Plaintiffs' allegations) where detainees had a limited expectation of privacy.  If
3    any potentially relevant BWC Video depicts a non-party minor detainee in a more private setting
4    (e.g., an individual interview after an arrest), Defendants may withhold such video from
5    production so long as they give notice to Plaintiffs that they have done so, and the parties shall
6    meet and confer and may file a joint letter if they are not able to agree to the appropriate treatment
7    of such a video.  This Order does not reach the question of whether different treatment may be
8    warranted for BWC Video taken in less public settings.

## III. CONCLUSION

For the reasons discussed above, the Court ORDERS as follows:

No later than August 21, 2024, Plaintiffs shall either: (1) turn over their smartphones to their attorneys for safekeeping for the duration of this litigation; (2) create a complete backup image of their smartphones, to be retained by Plaintiffs or their attorneys for the duration of this litigation; or (3) begin a targeted backup of their smartphones, after initiating the meet-and-confer process to determine the scope of such preservation no later than August 19, 2024.  Plaintiffs shall provide a list of their smartphones, operating systems, and applications to Defendants no later than August 19, 2024.

The parties shall file either a stipulation or joint statement consistent with this Order's discussion of Plaintiffs' juvenile records no later than August 21, 2024.  Upon entry of such a stipulation, Defendants shall produce any documents that Defendants previously withheld from production based on the privacy of Plaintiffs' juvenile records under state law, shall produce documents notwithstanding such protections going forward, and shall treat any documents that are subject to such protections as designated "confidential" for the purpose of this litigation.

Defendants shall produce BWC Video in response to Plaintiffs' requests for production, without limitation to video depicting the individual Plaintiffs.  Defendants may not redact, blur, or withhold BWC Video based merely on depictions of the detention of non-party minors. Defendants may designate BWC Video as "confidential" under the protective order, and may designate certain video "attorneys'-eyes-only" to the extent allowed by the protective order and

1 | this Court's previous Order addressing that issue.

2 | **IT IS SO ORDERED.**

3 | Dated: August 14, 2024

_____
LISA J. CISNEROS
United States Magistrate Judge